## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND


CRESCENT CITY ESTATES, LLC         :
                                      :
      v.                              :     CIVIL NO. CCB-08-3458
                                        :
BANK OF AMERICA, NA           :
                          ...o0o...

## MEMORANDUM

Now pending before the court is a motion for summary judgment filed by the plaintiff, Crescent City Estates, LLC ("Crescent City"), against the defendant, Bank of America, NA ("Bank of America"). Crescent City seeks to recover proceeds from insurance checks that Bank of America paid over unauthorized indorsements, alleging the defendant converted the checks pursuant to Maryland Uniform Commercial Code ("Code") § 3-420. Bank of America opposes the motion, contending it requires discovery to adequately assert its defenses under the Code. The issues have been fully briefed and the parties have been heard. For the following reasons, the court will deny the plaintiff's motion for summary judgment to allow for discovery relating to Bank of America's asserted Code defenses.


## BACKGROUND

In early 2005, Edward V. Giannasca, II approached Michael McCrary about investing in a proposed venture to buy real estate in New Orleans, Louisiana, for the ultimate purpose of converting the property into residential condominiums. Several limited liability corporations were to be created to acquire and develop the real estate and hold the ownership interests of

McCrary and Giannasca. Crescent City, the plaintiff in this action, was the parent company formed on February 24, 2005, when an agent acting on behalf of McCrary and Giannasca filed Articles of Organization with the state of Louisiana. Shortly thereafter, the articles were amended to name MR Crescent City, LLC and Giannasca Crescent City, LLC – the business entities created by McCrary and Giannasca to represent their interests in Crescent City – as the sole members of Crescent City. (*See* Pl.'s Mot. for Summ. J., Ex. 4.) In March 2005, another limited liability company created by Giannasca and McCrary purchased the real estate. Crescent City was the named insured on property damage insurance policies purchased from Lexington Insurance Company ("Lexington") and One Beacon Insurance Company ("One Beacon").

During this time, Giannasca introduced McCrary to Stuart C. Fisher, a business associate. Over time, Fisher assumed an increasingly active role in Crescent City's business operations. According to the plaintiff, Giannasca had agreed to share 50 percent of his profit with Fisher, unbeknownst to McCrary.

In late August 2005, the property sustained damage from Hurricane Katrina, and Crescent City submitted damage claims to its insurers. In September 2005, Giannasca retained a public insurance adjuster, Richard Agid, and his company Power Adjustment Group, LLC ("Power Adjustment") to represent Crescent City in negotiating the insurance claims. According to the plaintiff, Giannasca did not tell McCrary about the agreement with Agid and Power Adjustment. At around this time, Giannasca introduced Fisher to Agid and Power Adjustment as "counsel" to Crescent City.[1]

---

[1]According to the plaintiff, Fisher is not a practicing attorney and was never legal counsel to Crescent City.

In September 2005, Crescent City began negotiations to sell the Louisiana real estate, which culminated in selling the property for a profit in November 2005; 50 percent of the profits was distributed to McCrary, and the remaining 50 percent was equally divided between Giannasca and his wife. During that time, in October 2005, Fisher and Giannasca learned a substantial insurance settlement would be paid. In February and March 2006, Lexington and One Beacon issued three checks payable to Crescent City totaling $11 million as payments of insurance proceeds: check no. 1 from Lexington for $2 million, check no. 2 from Lexington for $7 million, and check no. 3 from One Beacon for $2 million. The two checks from Lexington were made payable to Crescent City Estates, LLC, and the check from One Beacon was made payable to Crescent City Estates, LLC and Power Adjustment Group. All three checks were delivered to Power Adjustment, which then delivered the checks to Fisher. According to the plaintiff, McCrary was never told about the checks.

The plaintiff contends that in February 2006, prior to the issuance of the checks, Fisher used a fraudulently created operating agreement identifying him as the owner of Crescent City to open a bank account in the name of Crescent City at a Bank of America branch in Palm Beach, Florida. (*See id.*, Ex. 47.) Fisher deposited the insurance checks he received from Power Adjustment into the Bank of America account by indorsing them as follows:

    Check no. 1: "Crescent City Estates, LLC By [signature of Stuart Fisher] manager"
    Check no. 2: "Crescent City Residences By [signature of Stuart Fisher]"
    Check no. 3: "Crescent City Estates, LLC By [signature of Stuart Fisher]"

(*Id.* Exs. 8-2, 8-3 & 8-4.) Fisher then wrote checks out of the Bank of America account to himself, his wife, Giannasca, and others.

According to the plaintiff, McCrary first learned of the insurance premiums and Fisher's

misappropriation in July 2006, and, in February 2007, he filed suit in the Circuit Court for

Baltimore City, Maryland on behalf of himself, Crescent City and MR Crescent City, LLC

against several defendants including Giannasca and Fisher seeking compensatory and punitive

damages. During discovery, the Bank of America records were revealed, and McCrary learned

the extent of Fisher's conduct. Giannasca and Fisher delayed the litigation by filing unsuccessful

claims in Louisiana to dissolve Crescent City and file bankruptcy on behalf of the corporation.

Eventually, the judge in the Maryland case removed Giannasca as manager of Crescent City and

entered judgments in favor of McCrary and the other plaintiffs in excess of $30 million.[2]

The plaintiff filed the current suit against Bank of America on November 26, 2008 in the

Circuit Court for Baltimore City, Maryland alleging a single count of Code conversion arising

from the three insurance checks. Shortly thereafter and prior to any court-ordered discovery,

Crescent City moved for summary judgment relying on the extensive record established in the

previous litigation. Bank of America timely removed the action to this court based on diversity

jurisdiction and opposes the summary judgment motion, contending that it requires the benefit of

discovery to adequately present a defense. The court heard oral argument on the summary

judgment motion on August 6, 2009.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

"should be rendered if the pleadings, the discovery and disclosure materials on file, and any

---

[2]In June 2009, the Maryland Court of Special Appeals vacated the judgment and remanded the case for further proceedings relating to the trial court's assessment of damages. *See Fisher v. McCrary Crescent City, LLC*, 972 A.2d 954, 962 (Md. App. 2009).

affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Supreme Court has clarified

this does not mean that any factual dispute will defeat the motion. "By its very terms, this

standard provides that the mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all

reasonable inferences in her favor without weighing the evidence or assessing the witness'

credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but

the court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

The defendant has filed an affidavit under Federal Rule of Civil Procedure 56(f) opposing

summary judgment on the grounds that more discovery is necessary. Rule 56(f) provides that a

court may deny a summary judgment motion "[s]hould it appear from the affidavits of a party

opposing the motion that the party cannot for reasons stated present by affidavit facts essential to

justify the party's opposition[.]"


**A. Code Conversion**

Crescent City brings a statutory conversion claim under Code § 3-420, which provides

that "[a]n instrument is ... converted if ... a bank makes or obtains payment with respect to the

instrument for a person not entitled to enforce the instrument or receive payment."  Md. Code,

Com. Law § 3-420(a). In order to bring an action for conversion, a payee must have "receive[d]

delivery of the instrument either directly or through delivery to an agent or a co-payee." *Id.* § 3-

420(a)(ii). It is undisputed that the insurance companies sent all three checks to Power

Adjustment and that Crescent City was the sole payee on two of those checks with Power

Adjustment as a co-payee on the third.

Crescent City clearly satisfies the element of delivery as to the check from One Beacon

because the check was delivered to a co-payee. As to the other two checks, Crescent City must

establish that Power Adjustment was acting as its agent when it received delivery.  The "Public

Adjuster Compensation Agreement" signed by Power Adjustment and Giannasca on behalf of

Crescent City states that Power Adjustment will "act or aid in the preparation, presentation,

adjustment and negotiation of, or effecting settlement of, the claim for loss or damage caused by

Hurricane Katrina...." (Pl.'s Mot. for Summ. J., Ex. 8-1.)  While Bank of America suggests that

"it does not necessarily follow that Power Adjustment was also the authorized agent of Crescent

City to receive the checks" (Def.'s Opp. Mem. at 8), it appears from the current record that

Power Adjustment was acting as plaintiff's agent when it received the checks such that Crescent

City has sufficiently satisfied the element of delivery. *See Nw. Nat'l Life Ins. Co. v. Laurel Fed.*

*Sav. Bank*, 979 F.Supp. 354, 356 (D. Md. 1996) (finding that insurance company received

delivery of premium checks when insurance agent under contract with company received them).

**B. Code § 3-406 Comparative Negligence Defense**

There are several defenses to a Code conversion claim. To assert what appears to be the

most viable of these defenses, a comparative negligence defense under Code § 3-406,[3] Bank of

America must demonstrate that it paid over "forged" indorsements. Crescent City contends that

Fisher's indorsements were not forged and, thus, this defense is not available to Bank of

America.

Prior to 1997, when Maryland adopted the 1990 Uniform Commercial Code ("U.C.C.")

revisions, § 3-406 applied when a failure to exercise ordinary care substantially contributed to

the making of an *unauthorized* signature on an instrument. The Code defines an unauthorized

signature as "one made without actual, implied, or apparent authority and includes a forgery."

Md. Code, Com. Law § 1-201(43). The commentary explains the narrowing to a "forged

signature" as follows: "Unauthorized signature is a broader concept that includes not only

---

[3]Section 3-406 provides:
(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
(b) Under subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.
(c) Under subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

forgery but also the signature of an agent which does not bind the principal under the law of agency. The agency cases are resolved independently under agency law. Section 3-406 is not necessary in those cases." *Id.* § 3-406 cmt. 2.

This language suggests that the rationale for narrowing the provision's scope was to weed out those cases better addressed by agency law. *See* 2 White & Summers, Uniform Commercial Code § 19-3 (5th ed.) (noting that where embezzler had authority to indorse checks for deposit and, "therefore, his signature was not a 'forged' signature, but merely an 'unauthorized' signature," § 3-406 does not apply). Here, however, the plaintiff insists that Fisher was not an agent authorized to indorse the checks at issue. (*See* Pl.'s Summ. J. Mem. at 41-43.) The plaintiff also argues that Fisher's indorsements, while unauthorized, were not forgeries. Thus, under the plaintiff's interpretation, neither agency law nor § 3-406 would apply in these circumstances. Such a result is arguably at odds with the rationale behind narrowing the scope of the provision.

Moreover, while the Code does not define the term "forgery," Maryland's history of interpreting forgery in the context of Code conversion is instructive and suggests a flexible approach. Prior to the U.C.C.'s 1990 amendments, a statutory conversion claim required a "forged" indorsement;[4] however most states, including Maryland, sought to expand the scope of the provision by equating a forgery with the concept of an unauthorized signature or indorsement. *See Nw. Nat'l*, 979 F.Supp. at 356 ("A forged endorsement, in other words, under

---

[4]The pre-1990 U.C.C. conversion cause of action, then codified at § 3-419, provided that "[a]n instrument is converted when ... [i]t is paid on a forged indorsement." As noted above, the 1990 U.C.C. amendments became effective in Maryland in 1997, and the conversion provision was recodified as Code § 3-420.

the law of Maryland and elsewhere, is one that is 'unauthorized'[.]").[5] The 1990 amendments

expanded conversion to apply in the case of a "person not entitled to enforce the instrument or

receive payment." *See* U.C.C. § 3-420; *see also* Md. Code, Com. Law § 3-420. In the wake of

the amendments to the conversion cause of action and § 3-406, however, Maryland courts have

yet to suggest that there is any meaningful distinction between a forged indorsement and an

unauthorized indorsement. As recently as 2006, the Maryland Court of Appeals, discussing in a

footnote the definition of a forgery under the Code, reiterated the equivalence of a forged and

unauthorized indorsement. *See Chicago Title Ins. Co. v. Allfirst Bank*, 905 A.2d 366, 377 n.14

(Md. 2006).[6]

Crescent City contends, however, that Fisher's indorsements were not forged. This is so,

the plaintiff explains, because Fisher included his own signature in the indorsements, thus, they

"were not counterfeits of a genuine signature. They contained a false statement of fact, namely

that Fisher was the manager or was otherwise authorized to make the indorsement, but they were

genuine signatures." (Pl.'s Summ. J. Mem. at 50.)  The plaintiff further argues that because

---

[5]The court notes that in *Northwestern National*, 979 F.Supp. at 356-57, Judge Smalkin referred to indorsements made in the name of an insurance company as forgeries where the insurance agent indorser "was without actual, implied, or apparent authority to endorse checks in the name of [the insurance company payee]."

[6]In *Chicago Title*, the plaintiff, a title insurer, wrote a check to Farmers Bank and expected Shannahan, the mortgagor and an account holder at Farmers Bank, to deliver the check along with an explanatory letter. Instead, Shannahan signed only his own name on the back of the check and deposited it into his personal account. *Id.* at 368. The Maryland Court of Appeals concluded there was no evidence that Shannahan's signature constituted a forgery because "Shannahan did not attempt to indorse the instrument as 'Farmers Bank,' nor is there any evidence as to what type of authority he purported to have while signing the check." *Id.* at 377 n.14. Here, in contrast, Fisher both indorsed the instrument as Crescent City and falsely purported to have the authority to do so.

Fisher deposited the checks into a phony Crescent City account for which he was the genuine signatory, his indorsement is not a forgery.

These arguments overlook critical facts: (1) the checks at issue were made payable to the genuine Crescent City business entity – not to an imposter entity; and (2) Fisher indorsed the checks in the name of Crescent City.[7] According to Crescent City, Fisher was not authorized to indorse checks on its behalf, rendering his indorsements forgeries under the Code. *Compare* Code § 3-405 cmt. 3, Case #3 (explaining that where a bookkeeper who is not authorized to indorse checks steals a check made payable to her employer and indorses it, that is a forgery), *with id.* Case #4 (explaining that where an employee who is authorized to indorse an employer's check does so for the sole purpose of stealing it, that is not a forgery because the "fraud ... is not the indorsement but rather the theft of the indorsed check"). This is so regardless of whether he signed his own name in order to misrepresent his authority. *Cf. Cont'l Cas. Co. v. Fifth/Third Bank*, 418 F.Supp.2d 964, 976 (N.D. Ohio 2006) (holding indorsements were forgeries under § 3-406 where agent indorsed checks made payable to business entity using a fake rubber stamp and included his secretary's signature to authenticate indorsement, because "the actual name of the person whose signature seeks to invoke the business entity's authority is less critical than the use of the entity's name to the determination that an endorsement" was a forgery).[8] In short,

---

[7]While Fisher indorsed one of the checks in the name of Crescent City Residences, that name is substantially similar to the payee's name such that it appears genuine. *See John Hancock Fin. Servs., Inc. v. Old Kent Bank*, 346 F.3d 727, 731 (6th Cir. 2003) (finding no forgery where the payee was John Hancock and the check was indorsed with a stamp reading "Sherman and Associates Financial Services" because the signature was not "substantially similar to the name of the intended signator such that it appears genuine").

[8]In *Continental Casualty*, 418 F.Supp. 2d at 976, the court rejected the plaintiff's argument that use of the secretary's name rather than an authorized agent's name rendered the

Fisher forged the payee's indorsements, and the inclusion of his own name to falsely authenticate those indorsements is largely irrelevant.[9] Moreover, the fact that Fisher deposited the checks in a fake Crescent City account is irrelevant in light of the undisputed fact that the checks at issue were made payable to the genuine business entity.

The court is also mindful that § 3-406 applies a comparative fault standard when both parties fail to exercise ordinary care. *See* Code § 3-406(b). To conclude that a defendant bank cannot assert this defense merely because an unauthorized indorser also signs his own name, regardless of the plaintiff's conduct, seems out of step with the Code's loss allocation rules.

Because the record demonstrates that Fisher indorsed the checks in Crescent City's name without the authority to do so – and in light of Maryland's traditionally broad interpretation of

---

entire indorsement a non-forgery. As described above, the reasoning applies equally well in this context where a forger signs his own name after affixing the business entity's signature.

Crescent City attempts to distinguish *Continental Casualty* by focusing on the method of indorsement; namely, that "[t]he use of a rubber stamp is a forgery because it is used in an attempt to deceive the bank into believing the stamp was the genuine stamp actually affixed by the payee." (Reply at 8.) Regardless of whether the unauthorized indorser uses a fake rubber stamp or, as in this case, manually writes the name of the payee, the method is always an attempt to deceive a bank into believing that the indorsement is genuine. Whether that manual indorsement appeared genuine due to the bank's negligence is a question of fact related to the bank's share of liability under the comparative negligence standard of § 3-406.

[9]The plaintiff's reliance on Maryland's common law definition of criminal forgery, which requires "a false making" rather than a mere "false statement of fact[,]" *see State v. Reese*, 388 A.2d 122, 127 (Md. 1978), is misplaced. First, *Reese* is factually distinguishable from the circumstances in this case. Further, as discussed above, the Maryland courts have taken a flexible approach to defining "forgery" under the Code, and the narrowing of § 3-406 to require a forgery was designed to weed out cases better addressed by agency law, indicating that what is required to prove guilt of the criminal offense of forgery is distinct from what is required for a party to assert a Code § 3-406 comparative fault defense. For the reasons explained in this opinion, the criminal definition of forgery does not control the outcome. *Cf. Hartford Fire Ins. Co. v. Maryland Nat. Bank, N.A.*, 671 A.2d 22, 32 (Md. 1996) (explaining that where the policies embodied in the Code are contrary to common law, the Code's loss allocation rules prevail).

forgery under the Code and the non-applicability of agency law to this case – it is sufficiently clear that Fisher's indorsements in this context may constitute forgeries under the Code such that Bank of America should be permitted to assert a defense under § 3-406(a).

*iii. Comparative Negligence*

Crescent City contends that, even if Fisher's indorsements constitute forgeries, summary judgment is appropriate because: (1) the current record demonstrates that neither Crescent City nor Power Adjustment was negligent in permitting Fisher access to the checks at issue; and (2) Bank of America's negligence was completely responsible for the loss.[10] Bank of America contends that the record is incomplete as to Crescent City's and Power Adjustment's conduct and that it needs discovery to properly assert a § 3-406 comparative negligence defense. Considering that Bank of America has not had the benefit of any of its own discovery in this case and the admitted connections between at least Giannasca (if not McCrary) and Fisher, the court will allow the defendant an opportunity to investigate why and how Fisher had access to checks made payable to Crescent City. As the plaintiff asserts, however, there is already a significant record stemming from prior litigation, and any new discovery should not be unduly repetitive as to what is currently before the court.

---

[10]Crescent City chiefly argues that Bank of America's conduct in allowing Fisher to open an account in the plaintiff's name without sufficiently trustworthy documentation and then to deposit and transfer such large sums of money was negligent.

**<u>CONCLUSION</u>**

Because it is sufficiently clear that Fisher's indorsements may constitute forgeries, a required element of § 3-406, Bank of America is not, as a matter of law, precluded from asserting this defense.[11] Accordingly, Bank of America is entitled to some discovery to investigate Crescent City's conduct in regard to the three converted checks. Therefore, summary judgment is inappropriate and the plaintiff's motion will be denied.[12]

A separate order follows.

| | |
|---|---|
|   August 13, 2009   |     /s/     |
| Date | Catherine C. Blake |
| | United States District Judge |

---

[11]While the court is skeptical as to the other defenses proffered by Bank of America – that Crescent City ratified Fisher's unauthorized conduct pursuant to Code § 3-403, that Fisher was an imposter pursuant to § 3-404, or that Fisher was an employee of Crescent City pursuant to § 3-405 – because limited discovery will proceed in any event, the court refrains from considering the applicability of these defenses at this time.

[12]Accordingly, the court will deny as moot the defendant's motion to strike an affidavit and exhibits from the plaintiff's motion for summary judgment. Further, the plaintiff's recently filed request for leave to correct record and file a supplemental memorandum will be granted to correct the record to reflect the plaintiff's citation of *Reese v. State*, 378 A.2d 4 (Md. App. 1977), *aff'd*, 388 A.2d 122 (Md. 1978), of which the court was already aware, and otherwise will be denied.